PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-1298

_____

BRAD RUSH, As Administrator of the Estate of Jeffrey
Dennis, Deceased.

v.

CITY OF PHILADELPHIA;
OFFICER RICHARD NICOLETTI, In his individual and
official capacity,

Officer Richard Nicoletti,
                                                    Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No.:  2-19-cv-00932)
District Judge:  Honorable Joshua D. Wolson

_____

Argued March 13, 2023

Before RESTREPO, AMBRO, and FUENTES, *Circuit Judges*

(Opinion filed:  August 30, 2023)

Shane Haselbarth    **[ARGUED]**
MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN
2000 Market Street
Suite 2300
Philadelphia, PA 19103

        *Counsel for Appellant Officer Richard Nicoletti*

James P. Davy    **[ARGUED]**
ALL RISE TRIAL & APPELLATE
1602 Frankford Ave.
P.O. Box 15216
Philadelphia, PA 19125

John J. Coyle
MCELDREW PURTELL
123 South Broad Street
Suite 2250
Philadelphia, PA 19109

        *Counsel for Appellee Brad Rush*

Craig R. Gottlieb
CITY OF PHILADELPHIA LAW DEPARTMENT
1515 Arch Street

17th Floor
Philadelphia, PA 19102

*Counsel for Appellee City of Philadelphia*

_____

OPINION OF THE COURT

_____

RESTREPO, *Circuit Judge*

As a reviewing court, we must often avoid the temptation to delve into factual inquiries that are beyond our ken. Our jurisdictional rules require us to exercise such restraint in reviewing this interlocutory appeal, taken from the denial of qualified immunity to a Philadelphia Police officer who fatally shot an unarmed driver suspected of criminal activity in August 2018.

During execution of a warrant, six plainclothes officers in unmarked police cars surrounded Mr. Jeffrey Dennis's vehicle at an intersection in West Philadelphia. Over the course of 48 seconds, Mr. Dennis attempted to free his car, bumping into the surrounding police vehicles. At one point, Mr. Dennis's car appeared to have stopped moving, and Officer Richard Nicoletti shot Mr. Dennis three times through the driver's side window. Mr. Dennis died at the scene.

Although the incident was captured on video by a security camera, the District Court on summary judgment found open questions of fact as to Mr. Dennis's estate's excessive force claims against the City of Philadelphia (the "City") and Officer Nicoletti; most notably, regarding whether Mr. Dennis posed a threat to the officers or public safety. The Court viewed the facts in the light most favorable to Mr. Dennis and denied Officer Nicoletti qualified immunity. It held that officer conduct including "sho[oting] at an unarmed driver attempting to escape at slow speed who had hit a car," and/or "using deadly force against an individual driving a car" when "the driver did not pose a threat to the safety of the officer or others," violated clearly established law.

The thrust of Officer Nicoletti's challenge to that determination is unmistakably factual, premised on a disagreement with the District Court's ruling that a reasonable

jury could conclude that Mr. Dennis posed no threat to officer or pedestrian safety. However, this is an interlocutory appeal of a denial of qualified immunity and our jurisdiction is constrained to the review of legal questions only. To the extent that any of Officer Nicoletti's arguments could be construed to articulate a legal challenge to the District Court's holding that his conduct violated clearly established law, we will affirm that holding.

## I.   BACKGROUND

### A.   Relevant Facts

In August 2018, Philadelphia Police obtained a search warrant for the house where Mr. Dennis resided, suspecting that the house was being used for drug activity. On August 20, several officers, including Officer Nicoletti, visited Mr. Dennis's house to execute the warrant, but he was not home. Officers performing the surveillance—Nicoletti, Bogan, Fitzgerald, Galazka, Sumpter, Sergeant Shuck, and Lieutenant Muldoon (the "Officers")—were in plain clothes "to maintain an advantage" while on the scene. App. at 33. They spotted Mr. Dennis driving near his house and decided to stop his car. The description of what happened next is primarily based on the District Court's recitation of the facts, supplemented by a video of the incident that was captured by a nearby surveillance camera, and is viewed in the light most favorable to Mr. Dennis. The video reflects the following:

#### 1.   *Initiation of the Stop*

While Mr. Dennis's vehicle is stopped at a red light at an intersection on a narrow one-way street,[1] an unmarked police car pulls up travelling the wrong way and blocks Mr. Dennis's path from the front.  As the District Court noted, there were not "any civilian cars or pedestrians in the immediate vicinity."  App. at 14.[2]

Once blocked in from the front, Mr. Dennis reverses his car.  However, officers had also blocked him in with another unmarked police car from behind.  The front police car then advances to close him in even more tightly.  Although he has been left very little space within which to maneuver, Mr. Dennis moves his car forward and back, attempting to free it, and bumps at slow speed between the unmarked police cars in front and behind him several times in the process.

Six of the Officers—Nicoletti, Bogan, Fitzgerald, Galazka, Sumpter, and Sergeant Shuck—emerge from the surrounding unmarked cars and approach Mr. Dennis's vehicle

[1]    Officer Nicoletti does not dispute that Sergeant Shuck "believed this area would be best for civilian and officer safety" because Mr. Dennis "would have nowhere to go on a one-way street."  App. at 34.

[2]    The video reflects that it is indeed a relatively slow intersection; two or three cars pass by in the background on the road perpendicular to the incident throughout the 48-second interaction.  The video shows that several pedestrians stop *after* the incident.  However, while it is taking place, there are no pedestrians anywhere near the scene except for a woman who appears to be watching from the far side of the two-way cross street throughout and out of harm's way.  The Officers testified that there were pedestrians just out of view of the camera around the corner, but they are not visible in the video.

quickly, most with guns drawn. These officers are not in uniform.[3] Mr. Dennis again moves his car forward, and collides slowly with the police car in front of him. Mr. Dennis's vehicle does not move for approximately fifteen seconds, during which time the Officers have their weapons pointed at him. Officer Fitzgerald appears to try to open the driver's side door. The Officers look from the video to be speaking to Mr. Dennis during this time, though the video has no sound.

Officer Galazka then runs over and smashes Mr. Dennis's driver's side window with a metal tool. After the window is broken, Mr. Dennis begins moving again, haltingly; he turns his vehicle to the right, in an attempt to creep over the curb and flee in that direction. Officer Bogan, who was situated on the passenger side of Mr. Dennis's vehicle, testified that at this point he saw Mr. Dennis reach to his right side near the center console. While Officer Bogan testified that he "could not see [Dennis's] hand," he alerted the other Officers that Mr. Dennis was "reaching." App. at 173. None of this is clearly visible from the video. Mr. Dennis maneuvers his car further to the right, and Officer Bogan, who was standing on the sidewalk, steps directly into its path.[4] Mr. Dennis advances the car forward slowly, and Officer Bogan immediately steps out of the way.

_____

[3] The District Court's recitation of the facts did not note that Officer Sumpter, who is standing behind the cars and out of Mr. Dennis's view, is wearing street clothes with a vest that says "POLICE" on it. App. at 278 – 00:22.

[4] During his deposition, Sergeant Schuck testified that it is a likely violation of Philadelphia Police directives for an officer to put himself in front of a moving vehicle.

### 2. *Officer Fitzgerald Tries to Grab the Keys*

Officer Fitzgerald then reaches into the broken driver's side window to try to grab the keys out of the ignition.[5]  Mr. Dennis reverses his vehicle while Officer Fitzgerald's arm is still in it.  Officer Fitzgerald does not remove his arm from the window, and appears to be pulled along with the car as it moves slowly forward once and backward once, though he remains on his feet throughout.  As the District Court noted, it is difficult to tell from the video whether Officer Fitzgerald was at any point "pinned" between Mr. Dennis's vehicle and the front police car, as Officer Nicoletti claims.[6]  App. at 7.  Officer Fitzgerald jogs away after he abandons his attempt to grab the keys and stands over to the side away from the action, looking winded.

---

[5] During Officer Fitzgerald's deposition, Mr. Dennis's counsel noted that this tactic likely violates [Philadelphia Police Department] Directive 12.8, which states that "it is highly recommended that an officer never reach into an occupied vehicle, in an attempt to shut off the engine, or to recover evidence, since this has been known to result in serious injury to officers.  Only in exigent circumstances should this tactic be used, e.g., the driver is unconscious and the motor is still running."  App. at 108–09.  Officer Fitzgerald responded that he felt this was one such exigent circumstance, given how "extremely busy" the intersection was.  *Id*. at 109.

[6] From the video alone, it does not appear that the front unmarked police car was indisputably close enough to do so.  Officer Fitzgerald testified that he yelled from pain and was transported to the hospital via ambulance, but none of this is evident from the video.

Mr. Dennis backs his car up once more, appearing to be lining it up to escape to the left. Officer Bogan, who was previously standing in the vehicle's way, holsters his weapon as Mr. Dennis's car turns away from him. Mr. Dennis accelerates forward, with slightly more speed than in prior attempts to elude the Officers. However, the driver of the front police car simultaneously accelerates towards him in an attempt to block him, and the cars collide with some force. Both cars shake from the impact; the dislodged front bumper of Mr. Dennis's car—which looks to have been previously damaged when he drove over the curb—flaps from hitting the front car. Mr. Dennis's vehicle comes to a complete stop; it is abutting the front police car nearly head-on and it does not appear from the video that it could advance further forward.

### 3. *Officer Nicoletti Discharges His Weapon*

Officers Fitzgerald and Bogan begin to approach Mr. Dennis's vehicle, weapons down, as it has stopped moving and appears fully stuck. As they are doing so, Officer Nicoletti, standing directly adjacent to the driver's side window, discharges his weapon three times through the side window at Mr. Dennis. The District Court found that Officer Nicoletti shot two seconds after the cars collided, that Mr. Dennis's car "was pointed away from any of the officers on foot," and that no other officers had their guns drawn at the time.[7] App. at 8. Mr. Dennis was pronounced dead at the scene, and no weapon was recovered from his vehicle.

---

[7] This is difficult to confirm solely based on the video, though Sergeant Shuck—who was standing next to Nicoletti throughout—had holstered his weapon previously, and he testified that he was not holding it when Nicoletti discharged.

**B.     Procedural History**

Plaintiff-Appellee Brad Rush, on behalf of Mr. Dennis's estate, brought claims in state court against Officer Nicoletti—in both his official and individual capacities—for excessive force under 42 U.S.C. § 1983, against the City under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), as well as state law assault and battery claims.    Officer Nicoletti subsequently removed to the Eastern District of Pennsylvania. Both Defendants sought summary judgment after discovery, which the District Court rejected on all counts, except for the official capacity claim against Officer Nicoletti.    Officer Nicoletti's timely appeal challenging the denial of his qualified immunity claim followed.[8]   The City did not submit its own briefs, and merely concurred with those of Officer Nicoletti.

## II.     JURISDICTION

Subject matter jurisdiction in the District Court was proper under 28 U.S.C. §§ 1331 and 1343(a)(3).

This Court's jurisdiction to hear Officer Nicoletti's appeal is a more complicated affair, as it "depends on whether we may treat the District Court's order" denying qualified immunity "as a 'final decision.'"   *Blaylock v. City of Phila.*, 504 F.3d 405, 408 (3d Cir. 2007) (quoting 28 U.S.C. § 1291). The collateral order doctrine dictates that "an interlocutory order of a district court may be treated as a 'final decision' if it: '(1) conclusively determine[s] the disputed question, (2) resolve[s] an important issue completely separate from the

---

[8]  Only Officer Nicoletti filed a notice of appeal; the City did not, and accordingly entered an appearance as an Appellee in this matter.

merits of the action, and (3) [is] effectively unreviewable on appeal from a final judgment.'" *Id.* (quoting *Johnson v. Jones*, 515 U.S. 304, 310 (1995)) (alteration in original).

In summary, our jurisdiction over this interlocutory appeal is limited to resolving legal questions, not factual questions. *See Johnson*, 515 U.S. at 316–18. Yet, the bulk of Officer Nicoletti's arguments relate to a factual question: whether the District Court correctly concluded that a reasonable jury could find that Mr. Dennis posed no threat to surrounding officers or public safety. While Officer Nicoletti attempts to invoke an exception to this jurisdictional bar where contemporaneous video "blatantly contradicts" the facts found by the District Court, we have reviewed the accompanying video in this case and see no such contradiction. As such, our jurisdiction extends only to the legal questions raised in Officer Nicoletti's briefs; namely, accepting the District Court's definition of his conduct, whether he violated clearly established law.

### A.    Limited Jurisdiction Over Interlocutory Review of Qualified Immunity

Where an interlocutory order challenges denial of qualified immunity, a reviewing court has jurisdiction over an appeal only to the extent that it "raises pure questions of law," as opposed to where it "challenges the District Court's determination of which facts were sufficiently supported by evidence." *Blaylock*, 504 F.3d at 409. Put another way, we cannot consider the factual question of "whether the district court correctly identified the set of facts that the summary judgment record is sufficient to prove." *Ziccardi v. City of Phila.*, 288 F.3d 57, 61 (3d Cir. 2002). However, we may review the legal question of whether those facts, so assumed,

are "sufficient to establish a violation of a clearly established constitutional right." *Id.* (citation omitted).

As the Supreme Court has explained, this is because where the first prong of the qualified immunity analysis—determining whether the conduct at issue violated the Constitution—depends on contested material facts, its resolution will be functionally inseparable from the merits of the case. *See Johnson*, 515 U.S. at 310–11, 318 (citing *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993)); *Monteiro v. City of Elizabeth*, 436 F.3d 397, 405 (3d Cir. 2006) ("when qualified immunity depends on disputed issues of fact, those issues must be determined by the jury"). Meanwhile, the second prong of the analysis—whether the conduct violated clearly established law—relates to the independent issue of immunity and may be determined separately from the merits. *Johnson*, 515 U.S. at 311–12; *see also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("The entitlement is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

Relevant to this discussion, the key facts the District Court identified as sufficient to defeat summary judgment, which it construed in the light most favorable to Mr. Dennis, are that:

- "By the time Officer Nicoletti shot [Mr. Dennis], his car had stopped moving, as the City's own investigation concluded. Even if it were moving, no one was in its immediate path."
- "Although Officer Nicoletti claims that he fired because Officer Bogan was in danger, Officer Bogan was on the passenger side of the car and had holstered his weapon, which suggests he did not perceive a threat to himself."

- "Nor were there any civilian cars or pedestrians in the immediate vicinity who Mr. Dennis might have threatened."
- "Mr. Dennis's hand motions might have raised a concern that he was reaching for a gun, or a factfinder could conclude that a reasonable officer would have perceived Mr. Dennis to be shifting gears."

App. at 13–14. Accordingly, the District Court concluded that "Mr. Dennis did not pose an immediate threat to any officer or civilian," and a reasonable factfinder could therefore conclude that Officer Nicoletti's use of lethal force was not justified. *Id*. at 13.

In effect, the District Court determined "that there is sufficient record evidence to support a set of facts under which there would be no immunity" for Officer Nicoletti, and, as an appellate body, "we must accept that set of facts on interlocutory review." *Blaylock*, 504 F.3d at 409 (citing *Schieber v. City of Phila*., 320 F.3d 409, 415 (3d Cir. 2003)). As such, "we may review the District Court's conclusion that the defendants would not be immune from liability if those facts were proved at trial," as this is a purely legal question. *Id*. We will conclude below that the latter analysis is straightforward under Third Circuit law: if Mr. Dennis proves the set of facts articulated by the District Court, Officer Nicoletti would not be immune from suit.

### B.    The *Scott v. Harris* Exception

There is one notable—though ultimately inapplicable—exception to this jurisdictional bar to an appellate court's factual review, which is where it finds that the record "blatantly contradict[s]" a district court's account of the facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). This situation typically

arises where there is contemporaneous video of the incident, and may effectively allow a reviewing court to redefine the conduct at issue in its qualified immunity analysis. Despite Officer Nicoletti's protestations to the contrary, we have performed an independent review of the video in this case, and the exception does not apply here. We are therefore bound to accept the version of Officer Nicoletti's conduct articulated by the District Court.

In *Scott v. Harris*, a police officer rammed the vehicle of a fleeing motorist, causing the motorist to lose control of his vehicle and crash. 550 U.S. at 375. The District Court had denied the officer qualified immunity, finding a genuine dispute of material fact as to whether the motorist presented an immediate threat to the safety of others, and the Eleventh Circuit affirmed. *Id.* at 376. The Supreme Court reversed, explaining that "[f]ar from being the cautious and controlled driver the lower court depict[ed]," a contemporaneous video of the incident reflected "a Hollywood-style car chase of the most frightening sort," and, as such, there was no genuine dispute that the driver indeed presented an immediate threat to others. *Id.* at 378–80; *see also Davenport v. Borough of Homestead*, 870 F.3d 273, 280 (3d Cir. 2017) (reversing as "blatantly contradicted by the [video] record" district court conclusion that, based on driver's version of facts, jury could find that driver posed no serious threat of immediate harm to others). This principle was later extended more broadly to where the district court made "blatantly and demonstrably false" factual determinations, not solely based on comparison to a contemporaneous video. *Plumhoff v. Rickard*, 572 U.S. 765, 771, 777–78 (2014) (holding that where record "conclusively disprove[d]" lower court finding that petitioner posed no threat

to officers, reviewing court had jurisdiction to redefine the right at issue to incorporate threat posed by driver).[9]

However, where there is no such "blatant contradiction," we lack jurisdiction over factual challenges to the definition of the right at issue in evaluating qualified

---

[9] Throughout his briefing, Officer Nicoletti abstractly relies on *Plumhoff* as a basis to disregard certain of the District Court's findings of disputed material fact—which were based on review of the contemporaneous video—where they contradict the Officers' record testimony. This is an overbroad reading of *Plumhoff*, as the Supreme Court there largely looked to undisputed record facts—for example, that the shooting was preceded by a car chase at speeds over 100 miles per hour, and at the time of the discharge the wheels of the driver's vehicle were spinning—in disagreeing with the district court as to the threat posed. 572 U.S. at 769, 776; *Est. of Allen v. City of W. Memphis*, No. 05-2489, 2011 WL 197426, at *3 (W.D. Tenn. Jan. 20, 2011), *aff'd in part*, 509 F. App'x 388 (6th Cir. 2012), *rev'd and remanded sub nom. Plumhoff v. Rickard*, 572 U.S. 765 (2014). Meanwhile, here, the District Court noted that where "the victim of deadly force is unable to testify," courts "should be cautious to ensure that the officer is not taking advantage of the fact that the witness most likely to contradict his story—the person shot dead—is unable to testify." App. at 10 (quoting *Abraham v. Raso*, 183 F.3d 279, 294 (3d Cir. 1999)) (cleaned up). The District Court appropriately "avoid[ed] simply accepting 'what may be a self-serving account by the officer,'" and looked to "circumstantial evidence that, if believed, would tend to discredit the police officer's story, and consider whether this evidence could convince a rational fact finder that the officer[s] acted unreasonably." *Id*. (quoting *Abraham*, 183 F.3d at 294).

immunity—including as to whether a victim of excessive force was a threat to officers or the public. *See El v. City of Pittsburgh*, 975 F.3d 327, 337–38 (3d Cir. 2020) (holding where appellate review of a contemporaneous video reveals that "the District Court did not make any demonstrably false findings about how the events unfolded," the "narrow" *Scott v. Harris* exception does not apply). In *El v. City of Pittsburgh*, the District Court had defined the right at issue as the Fourth Amendment right to be free from unreasonable seizure in the form of excessive police force where, "during an investigatory stop for a minor offense, [plaintiff] stands up and takes one or two small steps towards a police officer, standing a few feet away, in a non-threatening manner." *Id*. at 337.

The officer in *El* quarreled with this definition—citing, for example, that one of the victims of excessive force had pointed at an officer and ignored a gesture to sit back down, suggesting that the individual was threatening. *Id*. at 338. However, the majority noted that this was not a fact included in the District Court's recitation of the summary judgment record, and that viewing that gesture as threatening was merely "one interpretation of what happened." *Id*. Having found specifically that "the District Court's finding that [plaintiff] was non-threatening is not blatantly contradicted by the video," the majority concluded that an articulation of the right at issue which would have found the victim of police force to be threatening, "is not available to us within the limits of our jurisdiction." *Id*. at 337–38.

Officer Nicoletti invokes the *Scott v. Harris* exception, asserting that no jury could find that Mr. Dennis was not a threat to others. He does this by attempting to construe the District Court's determination that Mr. Dennis was not a threat as a legal conclusion that we have jurisdiction to review. However, this argument is foreclosed by our precedential

opinion in *El*, as he is likewise unable to show that the District Court made "demonstrably false findings about how the events [in question] unfolded." *Id.* at 337. As such, he cannot pry open the door to factual interlocutory review under the *Scott v. Harris* exception. *Id.*

Specifically, Officer Nicoletti asserts that the District Court's recitation of the facts—and particularly its ultimate conclusion that Mr. Dennis did not necessarily pose a threat— "blatantly contradicts the record and the video." Nicoletti Br. at 25. He alleges that these sources irrefutably reflect Mr. Dennis "violently driving his car backwards and forwards at officers, damaging two vehicles (in addition to his own), wrenching the knee of Officer Fitzgerald . . . , and ignoring unmistakable, repeated, and lawful orders to surrender." *Id.* Officer Nicoletti also challenges the District Court's view that there were no civilian cars or pedestrians in the vicinity, and that at the time he was shot, Mr. Dennis's car had stopped moving and no one was in its immediate path. We disagree that any of these facts is irrefutably demonstrated from either the record or the contemporaneous video, viewing them in the light most favorable to Mr. Dennis. As with *El*, while Officer Nicoletti offers merely one of several possible "interpretation[s]" of the events that unfolded, we are bound to choose the interpretation most favorable to Mr. Dennis. *El*, 975 F.3d at 337.

For example, a reasonable jury could find that Mr. Dennis was at no point driving violently "at officers." Nicoletti Br. at 25. Mr. Dennis was blocked in, had very little space within which to maneuver his car, and was unable to meaningfully accelerate at any point. Officers were clearly able to step out of the way whenever Mr. Dennis's car was positioned towards them.

We agree with the District Court that the video is also inconclusive as to what happened to Officer Fitzgerald's knee; the view of his lower body is obstructed by Mr. Dennis's car in the video, and he does not clearly appear to be limping until after Officer Nicoletti discharged his weapon.

The video is also without sound, and while one can observe the officers' mouths moving, it is far from undisputed that Mr. Dennis was aware that the plainclothes officers in unmarked cars were law enforcement, or that he heard or understood their "orders to surrender" and elected to ignore them. Nicoletti Br. at 25.

The District Court's conclusion that there were no pedestrians nearby is also far from demonstrably false. The single visible pedestrian prior to the discharge is far out of the way across a broad intersection. Further, while Officer Nicoletti points to the fact that there are more pedestrians on the scene after the discharge, a reasonable jury could easily find this was only due to the attention drawn from the incident itself.

Lastly, Officer Nicoletti argues that the video clearly "shows a dangerous criminal set on escape, recklessly endangering anyone who might happen by." *Id*. at 34. However, we agree with the District Court's conclusion that Mr. Dennis's car had stopped at the time that shots were fired, and that Mr. Dennis was not unquestionably "set on escape" at any cost in the moment before Officer Nicoletti killed him.

Because we find that the District Court's recitation of the facts is not "blatantly contradicted" by the record in this case, we are not permitted to deviate from those facts in reviewing its denial of qualified immunity. We must accordingly accept the District Court's conclusion that, viewing the facts in the light most favorable to Mr. Dennis as the nonmovant, he was not a threat to nearby officers or

pedestrians. As this bears on the scope of our jurisdiction, we are confined in this appeal to address only those of Officer Nicoletti's arguments that do not challenge this threat determination. In this case, that leaves whether Officer Nicoletti's conduct, so defined, violated clearly established law. The rest of his disagreements will be left for the jury to resolve.

## III.    ANALYSIS

### A.    Standard of Review

We exercise plenary review over a district court's grant of summary judgment, and we apply the same standard as the district court. *Adams v. Zimmer US, Inc.*, 943 F.3d 159, 163 n.4 (3d Cir. 2019). "Summary judgment is appropriate where, construing all evidence in the light most favorable to the nonmoving party, 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Sec'y U.S. Dep't of Labor v. Kwasny*, 853 F.3d 87, 90 & n.5 (3d Cir. 2017) (quoting Fed. R. Civ. P. 56(a)). A genuine issue of material fact is one that could lead a reasonable jury to find in favor of the nonmoving party. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). To the extent we have jurisdiction under the collateral order doctrine—for example, over legal questions like whether conduct violates clearly established law—we exercise plenary review. *See Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 986 (3d Cir. 2014).

### B.    Qualified Immunity

At root, Mr. Dennis's estate claims that Officer Nicoletti's use of lethal force was unreasonable under the Fourth Amendment and that he is liable under 42 U.S.C. § 1983 for damages. "When determining the reasonableness of an allegedly excessive use of force, the standard is whether the police officer's actions were objectively reasonable in light of the facts and circumstances . . . , regardless of the officer's intent or motivation." *El*, 975 F.3d at 336 (quoting *Rivas*, 365 F.3d at 198) (cleaned up). However, qualified immunity exonerates even unreasonable officer conduct unless (1) the officer violated a constitutional right, and (2) the right was clearly established, "such that 'it would [have been] clear to a reasonable officer that his conduct was unlawful.'" *Lamont v. New Jersey*, 637 F.3d 177, 182 (3d Cir. 2011) (quoting *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001)) (alteration in original).

Having sifted through those arguments raised by Officer Nicoletti that are jurisdictionally barred, we are left with a relatively straightforward merits question: accepting the District Court's factual recitation, was it correct in finding Officer Nicoletti unentitled to qualified immunity? It was.

The District Court defined the constitutional right violated here as the right to be free from unreasonable use of lethal force, specifically where an officer "sho[ots] at an unarmed driver attempting to escape at a slow speed who had hit a car," and/or "us[es] deadly force against an individual driving a car," from the side window while the car was moving away from the officer, "when the driver did not pose a threat to the safety of the officer (or others)." App. at 15. It then found that this right was clearly established. *Id.* (citing *Abraham*, 183 F.3d at 279; *Eberhardinger v. City of York*, 782 F. App'x 180 (3d Cir. 2019); *Lamont*, 637 F.3d at 185). We agree and will affirm the District Court's denial of qualified immunity and summary judgment to Officer Nicoletti.

### 1.  *Constitutional Violation*

Based on the District Court's recitation of the facts viewed in the light most favorable to the nonmovant, Officer Nicoletti conducted an unreasonable seizure of Mr. Dennis under the Fourth Amendment, and we take no issue with the District Court's articulation of the precise constitutional right he violated.  Whether force violates the Fourth Amendment is determined by the objective reasonableness standard.  *Rivas*, 365 F.3d at 198 (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)).  The factors we consider in determining reasonableness include "the severity of the crime at issue, whether the suspect[s] pose[ ] an immediate threat to the safety of the officers or others, and whether [they are] actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.  We also look to the "physical injury to the plaintiff, the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time."  *El*, 975 F.3d at 336 (quoting *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997)) (cleaned up).

The District Court did not explicitly evaluate each of these factors, but correctly concluded that, taking the facts in the light most favorable to Mr. Dennis, Officer Nicoletti's use of force was unreasonable and therefore violated Mr. Dennis's constitutional rights.  As discussed above, we find no blatant contradiction between the District Court's treatment of the facts and the contemporaneous video:  a jury could conclude that Mr. Dennis posed no immediate safety threat and was not violent or dangerous, he was unarmed, was outnumbered six-

to-one, and he suffered the most severe physical injury possible—death. As such, Mr. Dennis's estate has at this point adequately stated a constitutional violation in the form of an unreasonable use of force under the Fourth Amendment.

Further, we reject Officer Nicoletti's attempts to redefine the constitutional right at issue here as

> [the] right to be free from unreasonable seizure where, at the time, the decedent was already lawfully seized by a team of officers established by an unmistakable show of authority and application of reasonable force against him and the vehicle he was operating, was violently resisting arrest and attempting to escape the lawful custody of the officers, had endangered the life and safety of those around him, and was in the process of demonstrating his intent to continue risking the life and safety of others in the area in attempting to flee.

Nicoletti Br. at 2. As already discussed at length, Officer Nicoletti's "preferred articulation of the right at issue is not available to us within the limits of our jurisdiction" because it contradicts the District Court's explicit finding that several of these factual elements are disputed. *El*, 975 F.3d at 338.

### 2. *Clearly Established Law*

Further, as of August 2018, the right to be free from unreasonable force in the circumstances at issue here had long been clearly established under Third Circuit law. Although there need not be "a case directly on point for a right to be clearly established, existing precedent must have placed

the . . . constitutional question beyond debate." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)).

This particular constitutional question has been "beyond debate" in this Circuit since 1999. This Court in *Abraham v. Raso* evaluated an officer's interaction with a suspected shoplifter, where, after a brief pursuit on foot, the suspect returned to his car and tried to back it out of a parking spot at the mall, hitting another car behind him. 183 F.3d 279 (3d Cir. 1999). The officer testified that she had to jump out of the way to dodge the car when it reversed. *Id.* at 293. She ran around to the front of the car, and when the suspect lunged the car forward, she fired a single shot that killed him. *Id.* at 284. As here, the parties disputed exactly where the officer was positioned when she shot the suspect—in front or to the side of the vehicle—and whether he posed a threat to her before she fired. *See id.* at 285. This Court found that taking the facts in the light most favorable to the suspect's estate, we could not resolve these questions on summary judgment. *Id.* at 290. We noted in denying qualified immunity that "[a] passing risk to a police officer is not an ongoing license to kill an otherwise unthreatening suspect." *Id.* at 294.[10]

---

[10]  Officer Nicoletti correctly points out that *Abraham* also espouses the proposition that courts must take a totality of the circumstances approach to evaluating the threat posed by a victim of excessive force. Nicoletti Br. at 36 (citing *Abraham*, 183 F.3d at 291). As such, he advocates that the moment just before he discharged is too narrow a window from which to evaluate the threat posed by Mr. Dennis, as a matter of law. However, the District Court clearly did take the entirety of the stop into account when evaluating the threat posed by Mr. Dennis—for example, it acknowledged that Mr. Dennis had,

While too recent to serve as "clearly established" law here, our decision in *Jefferson v. Lias* underscored the enduring applicability of *Abraham* where, "based on the record, [the district court] was [un]willing to determine that the driver's conduct while fleeing was so egregious that it posed an immediate risk to the officers and the public" sufficient to justify lethal force. 21 F.4th 74, 83 (3d Cir. 2021). In *Jefferson*, we left for the jury questions of fact relating to where the defendant officer stood at the time of discharge and the extent he was actually in danger of harm by the driver. *Id.* at 80. This was despite that the use of force there followed a high-speed car chase (which sets forth an arguably more threatening situation than the one faced both by Officer Nicoletti and the officer in *Abraham*). *See id.* at 79. Having found the officer's conduct would violate clearly established law under *Abraham* if proved, we also noted that "[o]ther Courts of Appeals [that] have considered actions where officers have used deadly force against non-dangerous suspects attempting to evade arrest while driving have ruled in parallel." *Id.* at 82 (collecting cases).

---

prior to that moment, tried to evade arrest and could have injured an officer, and that Officer Bogan may have reasonably thought he was reaching for a gun. These facts were simply insufficient to change the District Court's overall calculus when the entire episode was viewed in the light most favorable to Mr. Dennis. Further, Officer Nicoletti provides no legal support for the proposition that the broader context of the stop, suspicion of selling drugs, necessarily poses a threat to officers or the public sufficient to justify lethal force.

Officer Nicoletti's cited authorities do not compel a different conclusion. He points to a series of decisions where courts found that force was justified because the suspect posed a threat to nearby officers or the public. Again, even were the District Court's determination that Mr. Dennis did not pose a threat to nearby officers or pedestrians reviewable, these cases are factually distinguishable.

Unlike here, where Mr. Dennis's car was stopped, the driver's car in *Brosseau v. Haugen* was indisputably still moving while trying to elude capture when an officer shot him in the back from behind. *See* 543 U.S. 194, 197 (2004).[11] In *Plumhoff v. Rickard*, officers suspected that the driver of the car had hit a pedestrian and the shooting took place after a high-speed car chase reaching speeds of over 100 miles per hour. 572 U.S. at 769 & n.1. Finally, *City and Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 605 (2015), and *Kisela*, 138 S. Ct. at 1150, involved individuals brandishing knives, and *City of Tahlequah, Okla. v. Bond*, 142 S. Ct. 9, 10–11 (2021), involved an individual threatening to hit officers with a hammer.

These cases fail to present a more analogous factual situation than *Abraham* itself, and we agree with the District Court that the right at issue here was clearly established thereby for purposes of affirming its denial of qualified immunity.

---

[11]    Although otherwise involving fairly similar facts, the Supreme Court acknowledged that the incident in *Brousseau* occurred before the decision in *Abraham*, and *Abraham* therefore could not have "clearly established" the right asserted, though the interlude suggests that it otherwise might have, if published earlier. *Id.* at 200 n.4.

## IV.    CONCLUSION

We will accordingly affirm the District Court's denial of summary judgment and qualified immunity and remand for trial.